## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**REBECCA NELLE**
**Mother and Next Friend of B.N., a minor child**                **PLAINTIFF**

**vs.**                    **NO. 5:21-cv-05158**

**HUNTSVILLE SCHOOL DISTRICT**
       **DEFENDANT**

### DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SEAL PROCEEDINGS

COMES NOW the Defendant, Huntsville School District, by and through its undersigned attorneys, Charles L. Harwell and Steven S. Zega of Crouch, Harwell, Fryar & Ferner, PLLC, and for its Brief in Support of its Motion to Seal Proceedings, and would make known to the Court the following:

Rebecca Nelle filed this lawsuit as the mother and next friend of B.N. In paragraph 2 of her complaint, she states:

> Plaintiff Rebecca Nelle is the mother and next friend of B.N., a minor who is under the age of 18 years of age [sic], and is a student at the Huntsville School District who is the victim in this cause of action. The name of B.N. can be filed in another pleading or document to be filed under seal with the Court or as directed by the Court. **To disclose the name of B.N. would potentially subject B.N. to ridicule, retaliation, and even harm.**

[Emphasis supplied.] Plaintiff's concern for her child's safety is laudable. However, with respect, that concern is undermined by the fact that she has named herself, publicly, identified her child by initials, and stated where that child attends school. She further identifies him by grade, gender and participation in a specific student organization- the boys' basketball team- later in her Complaint (Paragraph 9). B.N.'s exact identity is known or knowable with surgical precision by a person with reasonable intelligence reading the Plaintiff's Complaint. Likewise, the Plaintiff uses similar methodology to identify six alleged child perpetrators by initials (Complaint, paragraph 23.) and

then goes on to say that as many as 17 members of the boys' basketball team may have been victimized.

If the Plaintiff, as B.N.'s mother, had simply made an informed decision that it is in her child's best interest to proceed in this litigation with the near certainty that he will be subject to public identification, then the Defendant's position would be that decision is within the scope of a parent's rearing of her own child. But the Plaintiff's Complaint goes far beyond identifying B.N. alone and the harm the Plaintiff alleges he suffered:

> 10. It became obvious to B.N. in January 2020 that the boys' basketball team created a hostile educational environment. In this regard, B.N. learned that ninth grade **members** of the boys' basketball team would engage in forcible sexual assault against multiple boys' Middle School **players** by having one or more **students** holding an eighth-grade team member down while **one or more Middle School basketball players** would engage in what was called "baptism" and "bean-dipping," as those terms are defined below.
>
> 11. "Baptism", as the term is used in this Complaint, refers to the placing of one's genitals on the face and/or in the mouth of another student. "Bean-dipping", as the term is used in this Complaint, refers to placing a student's rectum and anus on the face and particularly the nose of another student. . . .

[Emphasis supplied.] Reading the Plaintiff's Complaint, it is clear that she alleges that these harmful and offensive behaviors were not just experienced by her child, but by multiple children, both as alleged perpetrators and alleged survivors. The Plaintiff has, in her Complaint, identified herself, and by initials, her own child and six alleged perpetrators. She has, for all practical purposes, identified every other child who was involved in these events, as alleged. She cannot make that decision for the other children and their families.

Arkansas law makes it clear that the victims of child maltreatment and their families have a privacy interest in the substantive contents of investigations involving the children:

> The purpose of this chapter is to:
> (1) Provide a system for the reporting of known or suspected child maltreatment;
> (2) Ensure the immediate screening, safety assessment, and prompt investigation of reports of known or suspected child maltreatment;

> (3) Ensure that immediate steps are taken to:
> (A) Protect a maltreated child and any other child under the same care who may also be in danger of maltreatment; and
> (B) Place a child whose health or physical well-being is in immediate danger in a safe environment;
> (4) Provide immunity from criminal prosecution for an individual making a good faith report of suspected child maltreatment;
> **(5) Preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians;**
> **(6) Encourage the cooperation of state law enforcement officials, courts, and state agencies in the investigation, assessment, prosecution, and treatment of child maltreatment**; and
> (7) Stabilize the home environment if a child's health and safety are not at risk.

[Emphasis supplied.] ARK. CODE ANN. § 12-18-102. Title IX regulations also state the codified public policy of keeping confidential the identities of persons involved in investigations- complainant, respondent or witness:

> The recipient must keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness, except as may be permitted by the FERPA statute, 20 U.S.C. 1232g, or FERPA regulations, 34 CFR part 99, or as required by law, or to carry out the purposes of 34 CFR part 106, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.

34 C.F.R. § 106.71 (Lexis Advance through the September 30, 2021 issue of the Federal Register, with the exception of the amendments appearing at 86 FR 54044, and 86 FR 54111).

The Defendant acknowledges the interest of the public in having access to Court records as a general rule. The 8th Circuit has discussed this right in several cases, including one very recent case:

> "[T]here is 'a common-law right of access to judicial records.'" *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)). "This right of access is not absolute," however, "but requires a weighing of competing interests." *Id.* When this common-law right is implicated, "we give deference to the trial court rather than taking the approach of some circuits and recognizing a 'strong

presumption' favoring access." *Id.* (quoting *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986)).

*Amador v. 3M Co. (In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.)*, No. 19-2899, 2021 U.S. App. LEXIS 24255, at *48 (8th Cir. Aug. 16, 2021).  A District Court's decision to seal records is reviewed for an abuse of discretion.  *IDT Corp. v. eBay, Inc.,* 709 F.3d 1220, 1223 (8th Cir. 2013), and requires the Court to engage in a balancing test of competing interests.  *Id.*  In this case, the interests are, on one side, the public's generalized interest in open court proceedings- a compelling interest, to be sure- versus the right of the children and their families to privacy, peace and an opportunity to heal.

Although the Plaintiff attempts to give her own child and six of the other alleged participants some measure of anonymity by identifying them in the Complaint by their initials, she ultimately fails.  Any ordinary person looking at the Complaint right now would know the gender of the persons involved, (eliminating half the school population), the age group (eliminating ten grades of the school population), and the precise school organization- the boys' middle school basketball team- to which the perpetrators and survivors belonged (finally eliminating more than 99.98% of the school population). Moreover, the roster for that team, as well as individual records of participation in games, such as scorebooks, are also public records.  Anyone with sense enough to review those scorebooks, a school yearbook, a team picture with names, social media posts or other readily available open-source information can easily identify each child "initialed" in the Complaint by matching those initials to names and the process of simple elimination.  Identifying the 17 other children who are not perpetrators, but the Plaintiff alleges are survivors, even though they are not even "initialed" is a slightly more difficult task, but also made relatively easy by eliminating B.N and the other initialed children as possibilities.  And because the Plaintiff alleges that the behavior was "pervasive" (Complaint, paragraph 12.) and refers repeatedly in the plural

to the alleged perpetrators and survivors (*Id.*, paragraphs 10., 11., 15., 19., and 20.), she paints a picture of multiple students being assaulted multiple times by other students.  Each of those children and their respective families are entitled to privacy.  The minor children who are survivors of these terribly private, embarrassing, humiliating events risk precise public identification- without their names being published.  Survivors risk further humiliation, embarrassment and degradation.  Alleged perpetrators will forfeit the opportunity to make amends and rehabilitate in private.  Innocent members of the school organization will inevitably deal with questions about whether they knew about the events in question, participated in the events in question, or were victims/survivors.  Survivors and their parents are going to refuse to participate in law enforcement investigations for fear the children will not be able to remain anonymous.  Indeed, Plaintiff's own statement in paragraph 2 of her Complaint acknowledges "[t]o disclose the name of B.N. would potentially subject B.N. to ridicule, retaliation, and even harm."  Why shouldn't the other 23 children, identified in varying degrees of certainty in the Complaint, also be protected from ridicule, retaliation and harm?

The unfortunate reality is that the only way to protect all of these children from the consequences of decisions adults make is to seal these proceedings in their entirety.  No live testimony and no record of this case- be it a pleading, motion, brief, court order or otherwise, should be open to the public without a prior order of this Court.

SO THIS COURT SHOULD HOLD.

> Respectfully Submitted,
> Huntsville School District, Defendant
>
> By: /s/ Steven S. Zega
> Charles L. Harwell, Arkansas Bar Number 82074
> Steven S. Zega, Arkansas Bar Number 93234
> Crouch, Harwell, Fryar & Ferner, PLLC
> 111 Holcomb, P.O. Box 1400

                                          Springdale, AR 72765-1400
                                          (479) 751-5222
                                          (479) 751-5777 (fax)
                                          charwell@nwa.law
                                          szega@nwa.law

## CERTIFICATE OF SERVICE

I, Steven S. Zega, attorney at law, hereby certify that I placed a true and correct copy of the foregoing document in the United States Mail with adequate first-class postage affixed and addressed to:

Joey McCutchen, Esq.
Sam "Chip" Sexton, III, Esq.
Stephen Napruno, Esq.
McCutchen, Sexton, Napruno, The Law Firm
P.O. Box 1971
Fort Smith, AR 72902
(and via email to jmccutchen@muccutchenlawfirm.com)


on this _____ day of October, 2021, in accordance with the Federal Rules of Civil Procedure.


/s/ Steven S. Zega
Steven S. Zega