## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**REBECCA NELLE**
**Mother and Next Friend of B.N., a minor child**                                          **PLAINTIFF**

**vs.**                                           **NO. 5:21-cv-05158**

**HUNTSVILLE SCHOOL DISTRICT**
**DEFENDANT**

### RULE 26(f) REPORT

COME NOW the Plaintiff, Rebecca Nelle, as mother and next friend of B.N., a minor

child, and the Defendant, Huntsville School District; and for their Joint Rule 26(f) Report,

respectfully state to the Court as follows:

1.       **Plaintiff's Statement of the Case.**

### PLAINTIFF'S STATEMENT OF FACTS

1.       In the 2020-2021 school season at Huntsville Middle School, B.N. was an eighth-

grade student and member of, and player on, the Huntsville Middle School boys' basketball

team.

2.       B.N. learned that ninth grade members of the boys' basketball team would engage

in forcible sexual assault against multiple boys' Middle School players by having one or more

students holding an eighth-grade team member down while one or more Middle School

basketball players would engage in what was called "baptism" and "bean-dipping."

3.       A student told Huntsville Middle School Basketball Coach Kaleb Houston about

the details of the sexual assaults. In late October 2020, a parent of a student also notified Coach

Houston about the improper sexual activities.

4.      Coach Houston took no action to report these actions to his superiors, including Principal Matt Ferguson and Superintendent Audra Kimball and the Defendant's Title IX Coordinator or to take corrective measures on behalf of the Defendant. Coach Houston failed to report what he had been told to the Arkansas Child Abuse Hotline.

5.      Between November 7, 2020 and early February 2021, B.N. was subjected to being baptized and/or bean-dipped by older teammate(s) while involved in athletic activity within the Huntsville Middle School Boys' Basketball team a total of fourteen times while being held down against his will by other older basketball players at the school.  The bean-dipping occurred several times at the same time as the baptizing.  This generally happened immediately after a junior high basketball game but the first instance identified in the paragraph immediately above occurred before the Maroon and White Game.  It all occurred in the locker room of the school where the particular basketball games were held.

2.      **Defendant's Statement of the Case.** Plaintiff is the mother and natural guardian of a student, B.N., in the Huntsville School District (District).  B.N. was on the junior high basketball team.  Plaintiff alleges B.N. was bullied and subjected to sexual harassment by other players in the locker room after a number of the team's basketball games.  None of the coaches were present during any of these incidents.  Neither the plaintiff nor B.N. himself reported to any employee of the District any of the occasions in which B.N. was victimized.  The horrific peer-on-peer behaviors in locker room were not brought to the attention of anyone in the administration of the District until the high school principal received a call from a former student, not the plaintiff, on the evening of February 9, 2021.  Because the District had to cancel school from February 10 through February 19 due to inclement weather, the District could not investigate until Monday, February 22, the first day school was back in session.  At that time the

coaches of the basketball time called in the members of the team and asked a series of questions. On February 24, the District's Title IX coordinator initiated a formal complaint and the investigation thereafter was conducted pursuant to the federal regulations promulgated under Title IX.

Based upon the findings of that investigation, punishment was meted out to several students. Subsequently, the District received two formal complaints from parents, alleging similar incidents in the same time frame as the original complaint. The District has conducted an investigation of those complaints per the regulations, which investigation is still active and has not yet been completed. Since the principal received information on February 9 and the District initiated its investigation into the first complaint, no similar incidents have been reported.

3.      **Are there any objections pursuant to Rule 26(a)(1)(C) to providing required Initial Disclosures?** No.

4.      **Are there any objections to the timing of Rule 26(a) Initial Disclosures?** Yes, Defendant asks that the Court enter a protective order before the Defendant is required to release records protected by law. The protective order is needed, first, to permit the Defendant to make the disclosures of records it is otherwise required by law to protect, and second, to limit the public's access to such records, once they are disclosed. The parties are aware that, pursuant to Fed. R. Civ. P. 26(a)(1)(E), they must make their initial disclosures based on the information then reasonably available to each of them and that they are not excused from making their disclosures because they have not fully investigated the case, because they challenge the sufficiency of another party's disclosure, or because another party has not made its disclosures.

5.      **Agreed Document Productions.** The parties shall provide to one another all audio recordings, policies, handbooks, petitions, emails, screen shots, text messages, affidavits, police reports, transcripts, attendance records, and other documentation in their respective possessions which relate to or in any way concern the allegations of the plaintiff.

6.      **Discovery.**

a.      **How many months are reasonably necessary to complete discovery as measured from the date of the Case Management Hearing?** Nine months.

b.      **Do the parties seek to alter (increase or decrease) the maximum number of discovery requests allowed by the Rules?** No.  **If so, please explain**

c.      **Do the parties seek to increase the maximum number of depositions allowed per side?  If yes, please explain the necessity and state how many depositions per side are proposed.**  Yes, there are upwards to thirty students involved in the basketball team.  Twenty depositions per side or as agreed.

d.      **Please characterize the scope and extent of electronic discovery contemplated by the parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex.  If your answer is "complex," then please complete and attached Schedule A.**  (ii) Fairly simple and routine.

e.      **Do you anticipate the use of expert witnesses at trial?  If so, state proposed dates by which the parties will be in a position to provide initial and rebuttal expert disclosures pursuant to Rule 26(a)(2).**    The Plaintiff may retain an expert and is exploring options; the Defendant is uncertain about the use of an expert.  If the Plaintiff retains an expert, initial disclosure will occur on or before May1, 2022. The Defendant will then provide rebuttal expert disclosure, if any, on or before June 15, 2022.  If the

Defendant retains an expert, initial disclosure will occur on or before June 15, 2022. The

Plaintiff will then provide rebuttal expert disclosure, if any, on or before August 1, 2022.

f.       **Do the parties presently contemplate the need for a protective order prior to**

**the exchange of documents or information?**  The Defendant has asked the Court to seal

the record and close any hearings.  That motion is still pending.  In furtherance of that

position, the Defendant requests that the Court restrict access to attorney eyes only as to

any records provided, that are otherwise protected by Family Educational Records and

Privacy Act (FERPA) (20 U.S.C. § 1232(g)) , the Arkansas Child Maltreatment Act, Ark.

Code Ann. §§ 12-18-101, *et seq*., and the constitutionally protected rights of all students

who are alleged to being involved in the matter or the constitutional right of privacy of

the students and families involved. This is necessary to prevent disclosure of the

identities of any persons under the age of 18.  The Court's protective order should also

provide that the Defendant is required to produce such records that would otherwise be

protected by the above referenced law and that such production is not a violation of any

of the law cited.

7.       **State the parties' best estimate as to the number of days reasonably necessary to**

**fully try the case.**  Six days.

8.       **State whether 90 days–measured from the Case Management Hearing–is a**

**sufficient amount of time to add parties and/or amend pleadings.**  Yes.

9.       **Settlement Prospects.**   Settlement is unlikely at this time, but the parties will likely

request an early settlement conference after the completion of some basic initial discovery.

10.      **Special Issues and Schedules.**  None.

11.    **Have all corporate parties filed the disclosure statement contemplated by Fed. R.**

**Civ. P. 7.1?**  N/A.

Dated this 22nd day of November, 2021.

**REBECCA NELLE, as mother and next friend of B.N.,
a minor child, Plaintiff**

McCUTCHEN, SEXTON, NAPRUNO, THE LAW FIRM
Her Attorneys
P.O. Box 1971
Fort Smith, AR 72902

_____/s/ Joey McCutchen_____
Joey McCutchen, Ark. Bar No. 88045

_____/s/ Sam "Chip" Sexton, III_____
Sam "Chip" Sexton, III, Ark. Bar No. 87157

_____/s/ Stephen Napruno_____
Stephen Napruno, Ark. Bar No. 2017071

**HUNTSVILLE SCHOOL DISTRICT,**
Defendant

CROUCH, HARWELL, FRYAR & FERNER, PLLC
Their Attorneys
111 Holcomb Street
P.O. Box 1400
Springdale, AR 72765-1400
(479) 751-5222 Telephone
charwell@ccchlaw.com
mfryar@ccchlaw.com

_____/s/ Charles L. Harwell_____
Charles L. Harwell, Ark. Bar No. 82074

_____/s/ Steven S. Zega_____
Steven S. Zega, Ark. Bar No. 93234

_____/s/ Matthew L. Fryar_____
Matthew L. Fryar, Ark. Bar No. 09121