IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REBECCA NELLE,                                                                                          PLAINTIFF
as mother and Next Friend of B.N., a minor

V.                              CASE NO. 5:21-CV-05158

HUNTSVILLE SCHOOL DISTRICT                                                              DEFENDANT

V.

MADISON COUNTY RECORD, INC.                                                           INTERVENOR

### MEMORANDUM OPINION AND ORDER

Rebecca Nelle brings this suit on behalf of her son B.N., a minor, against Huntsville School District ("the School District") pursuant to Title IX of the Education Amendments of 1972. Currently before the Court are the School District's Motion to Limit Pretrial Publicity, which seeks to prevent all participants in this litigation from commenting to the media, and the School District's Motion to Seal Proceedings, which seeks to close off the entirety of these proceedings from public view.[1] Ms. Nelle and the Madison County Record ("the Record"), a local newspaper, oppose the School District's motions.

The Court recognizes the compelling need to protect both the School District's right to a fair trial and the confidentiality of the students and parents involved in the allegations

---

[1] The Court has before it the School District's Motion to Limit Pretrial Publicity (Doc. 10), Brief in Support (Doc. 11), Motion to Seal Proceedings (Doc. 13), Brief in Support (Doc. 14), Ms. Nelle's Response in Opposition to Motion to Limit Pretrial Publicity (Doc. 24), Brief in Support (Doc. 37), Ms. Nelle's Response in Opposition to Motion to Seal proceedings (Doc. 26), Brief in Support (Doc. 38), the Madison County Record's Response in Opposition to Motions to Seal and Limit Pretrial Publicity (Doc. 39), the School District's Reply to Response to Motion to Limit Pretrial Publicity (Doc. 40), and the School District's Reply to Response to Motion to Seal (Doc. 41).

1

in Ms. Nelle's Complaint. The Court weighs those needs against the case participants' First Amendment right to comment on this litigation and the public's right to access these proceedings. Given these competing interests, the Court will neither prohibit all pretrial publicity nor seal this case in its entirety. Instead, it orders a solution narrowly tailored to balance the interests at stake, as detailed below.

Accordingly, the Motion to Limit Pretrial Publicity (Doc. 10) is **DENIED**, and the Motion to Seal Case (Doc. 13) is **GRANTED IN PART AND DENIED IN PART.**

## I.  BACKGROUND

During the 2020–2021 school year, B.N. was an eighth grader at Huntsville Middle School in Huntsville, Arkansas, where he played on the school's basketball team. Ms. Nelle alleges B.N. and other eighth-grade team members were sexually assaulted by ninth grade team members and that school administrators knew of this abuse and failed to prevent or remedy it. The School District contends that, to the extent B.N suffered the alleged injuries, the School District has satisfied its obligations under Title IX. These events have understandably attracted public scrutiny. Media outlets—including the Madison County Record, a newspaper based in Huntsville—have reported extensively on them.

The School District's Motion to Limit Pretrial Publicity urges the Court to order both the parties and attorneys to refrain from making any comments to the press or on social media about this case while it is pending—in other words, issue a gag order. It argues counsel for Ms. Nelle "is attempting to try the case in the media," (Doc. 11, p. 1), in violation of the following sections of Arkansas Rule of Professional Conduct 3.6:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the

> lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter. A statement referred to in this paragraph ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:
>
> (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;
>
> . . . .
>
> (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; . . . .

The School District contends Ms. Nelle's counsel's comments to the media prejudice the School District and taint the jury pool. The Court granted the Record's motion to intervene in this case for the limited purpose of opposing the School District's Motion to Limit Pretrial Publicity.

The School District has also filed a Motion to Seal asking the Court to seal all records entered on the docket and close all live proceedings to the public in order to protect the privacy rights of the minor students involved. The Court sealed Ms. Nelle's Complaint (Doc. 2) pending the resolution of the Motion to Seal.

## II.  MOTION TO LIMIT PRETRIAL PUBLICITY

### A.  Legal Standard

"A gag order is a prior restraint on speech and, as such, is 'the most serious and least tolerable infringement on First Amendment Rights.'" *United States v. McGregor*, 838 F. Supp. 2d 1256, 1260 (M.D. Ala. 2012) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). In *Nebraska Press Association*, the Supreme Court held that a state trial court's order prohibiting the media from reporting on certain aspects of a

3

criminal trial was an unconstitutional prior restraint under the First Amendment. 427 U.S. at 570. The Court in *Nebraska Press Association* employed "the exacting 'clear and present danger' test" to analyze the state court's prior restraint on the press. *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987).

However, "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991). In *Gentile*, the Supreme Court examined Nevada Supreme Court Rule 177, which—like Arkansas Rule 3.6—is modeled after ABA Model Rule of Professional Conduct 3.6. Each of these rules restrict attorneys from making comments that have a "substantial likelihood of materially prejudicing" a pending proceeding. Such limitations on attorney speech seek to prevent "two principal evils: (1) comments . . . likely to influence the actual outcome of the trial, and (2) comments . . . likely to prejudice the jury venire, even if an untainted panel can ultimately be found." *Id.* at 1075. The Supreme Court held, in part, that "the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." *Id.* Thus, it concluded, states may punish attorneys who engage in pretrial publicity in violation of that standard. *Id.*

*Gentile* involved after-the-fact punishment of attorney speech. But district courts also apply the same analysis to requests for *prior restraints* on attorney speech. *See Graham v. Weber*, 2015 WL 5797857, at *10 (D.S.D. Oct. 5, 2015) (denying "the requested gag order as the extrajudicial statements in issue do not pose a substantial likelihood of materially prejudicing the pending adjudicatory proceeding"); *McGregor*, 838

F. Supp. 2d at 1267 (denying a gag order under the *Gentile* standard because a less restrictive means—simply ordering the parties to comply with Rule 3.6—was available); *United States v. Rodriguez*, 2006 WL 8438023, at *3 (D.N.D. June 29, 2006) (issuing a gag order after finding a "substantial likelihood that extrajudicial statements of the trial participants would prejudice [the court's] ability to conduct a fair trial"); *Constand v. Cosby*, 229 F.R.D. 472, 475–78 (E.D. Pa. 2005) (refusing to issue a gag order and instead incorporating Rule 3.6 into the court's case management order).

Accordingly, the appropriate inquiry in the instant case is whether speech by an attorney has or will create a substantial likelihood of materially prejudicing these proceedings in light of the "two evils" identified in *Gentile*.[2] Any restraint on speech must be narrowly tailored to that end and imposed only after deeming less restrictive alternatives ineffective. *See Gentile*, 501 U.S. at 1076.

### B. Discussion

The School District asks the Court to "issue an Order barring all case participants- attorneys and parties- from commenting to the press or on any platform accessible to the press- including but not limited to social media on matters related to this case." (Doc. 10,

---

[2] While the Motion to Limit Pretrial Publicity focuses on attorney conduct, it also requests the parties themselves be barred from commenting to the media about this case. Much of the reasoning in *Gentile* justifying a lower standard for regulating attorney speech in pending cases does not apply to non-attorneys. *See Gentile*, 501 U.S. at 1074 (pointing to the unique role and responsibilities of attorneys as officers of the court). As explained below, the Court finds no cause to limit the speech of the parties. Nevertheless, for the purposes of this Motion, the Court assumes the higher standard used in *Nebraska Press Association* for a prior restraint on the press would apply to a prior restraint on a party. *But see Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 493 (5th Cir. 2013) (applying the "substantial likelihood of prejudice test to both attorneys and parties").

¶ 7). The School District takes particular issue with comments made to the media by one of Ms. Nelle's attorneys, Joey McCutchen.

The School District does not allege Ms. Nelle herself has made or is likely to make prejudicial comments about this case to the press, and therefore the Court currently finds no cause to restrain Ms. Nelle's speech. Mr. McCutchen's comments, however, merit further scrutiny.

The School District contends "[t]here is a *reasonable possibility* that Plaintiff's counsel's statements will unfairly influence potential jury members." *Id.* at ¶ 5 (emphasis added). The question, however, is whether these types of comments to the media pose a *substantial likelihood* of materially prejudicing these proceedings, i.e., whether the comments are substantially likely to either influence the outcome of the trial or prejudice the jury venire. *See Gentile*, 501 U.S. at 1075.

Mr. McCutchen stated to the press "they've had children sexually assaulted in the school district multiple times." (Doc. 10, ¶ 2). This statement does not warrant limiting future pretrial statements. First, this is largely an undisputed statement of fact. The parties' dispute the sufficiency of the School District's response to the assaults, not whether they occurred. *See* Doc. 43, pp. 2–3. Second, this statement is essentially a recitation of the facts in the Complaint, *see* Doc. 2, ¶¶ 10, 20, 23, and in earlier news reports, *see* Doc. 37, pp. 7–8. In general, publicly restating allegations already on the record does not materially prejudice a proceeding. *See* Ark. R. Prof'l Conduct 3.6(b)(1)–(2) (allowing an attorney to state "the claim, offense or defense involved and . . . the information contained in a public record").

The School District also cites statements by Mr. McCutchen that, according to the School District, conflate the instant case with related state court litigation involving the Freedom of Information Act ("FOIA"). But, similar to the above, referencing information *already publicly available* from a related case while discussing the instant case does not, on its own, influence the outcome of this case or prejudice the jury pool such that a prior restraint on future comments is necessary.

Next, Mr. McCutchen stated publicly that he is seeking criminal charges against School District employees for their alleged failure to report the sexual assaults to the proper authorities. This statement comes closer to materially prejudicing these proceedings. When an attorney—who holds no authority to bring criminal prosecutions—publicly suggests a civil defendant may face criminal punishment for the actions at the heart of a civil suit, that attorney risks prejudicing potential jurors against the defendant.

Nevertheless, even if such comments pose a substantial likelihood of materially prejudicing these proceedings, any resulting prejudice can be adequately addressed with less restrictive alternatives, such as "searching questioning of prospective jurors . . . to screen out those with fixed opinions as to guilt or innocence" and "use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court." *Nebraska Press Ass'n*, 427 U.S. at 564. Rule 3.6 itself should also deter future prejudicial public comments, as Mr. McCutchen could be subject to discipline by the Arkansas Supreme Court for violations of his ethical obligations.

At this point, there is insufficient cause to limit pretrial publicity by the attorneys in this case. Prior restraints on speech are a disfavored remedy, and the facts here do not overcome the "'heavy presumption' against [a prior restraint's] constitutional validity." *Org.

7

*for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Even so, counsel is reminded to scrupulously follow Rule 3.6 in making future public statements about this case. The efficacy of the alternatives identified above will be diminished if additional materially prejudicial comments are made to the media, and the Court may be forced to impose a gag order if its ability to hold a fair trial is put at risk.

For these reasons, the School District's Motion to Limit Pretrial Publicity (Doc. 10) is **DENIED**.

### III. MOTION TO SEAL CASE

#### A. Legal Standard

The School District asks the Court to seal both the live proceedings in this case and all records filed on the docket. Access to judicial proceedings and access to judicial records involve similar but distinct inquiries.

The First Amendment guarantees the public the right to attend criminal proceedings. *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 10 (1986). However, neither the Supreme Court nor the Eighth Circuit has recognized a First Amendment right to attend *civil* proceedings. *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1374 (8th Cir. 1990) ("We find it unnecessary to our decision in this case to decide whether there is a First Amendment right of access applicable to civil proceedings."). In *Webster Groves*, the Eighth Circuit did, however, recognize a qualified common law right to access civil court proceedings. *Id.* at 1375. That case involved a civil suit between a school district and a minor student accused of bringing a loaded handgun to school. The court held that "the District Court did not err in granting the motion for closure" of the

courtroom during a preliminary injunction hearing because the student's privacy interests outweighed the public's common law right of access. *Id.* at 1376.

Similarly, the Supreme Court has recognized a qualified common law right to access judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A request to seal judicial records requires "balancing 'the interests served by the common-law right of access . . . against the salutary interests served by maintaining confidentiality of the information sought to be sealed.'" *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (quoting *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013)).[3] The interests served by the common law right of access include "bolster[ing] public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings," ensuring the courts remain accountable to the public, and public oversight of government agencies. *IDT Corp.*, 709 F.3d at 1222. The Eighth Circuit defers to the district court's weighing of these interests against the need for confidentiality. *See Webster Groves*, 898 F.2d at 1376 (reviewing for abuse of discretion and noting that "[w]hen the common law right of access to judicial records is implicated, we give deference to the trial court"). However, records should be sealed only when no reasonable alternatives, such as redaction, exist. *See id.* at 1377 (affirming a district court's sealing of a case file where no other reasonable alternatives existed and "redaction of the file would be virtually impossible"). The Eight Circuit has not recognized a First Amendment right to access judicial records. *IDT Corp.*, 709 F.3d at 1224 n.*.

---

[3] The first step in the inquiry is determining if "the documents in question are 'judicial records.'" *Flynt*, 885 F.3d at 511. The School District seeks to seal all documents in this case, and there is no dispute that such documents include "judicial records."

9

In short, there exists a qualified common law right to access both civil proceedings and judicial records. Both rights are subject to limitations to protect legitimate privacy interests, but district courts must consider reasonable alternatives to complete sealing.

## B.  Discussion

Because this case involves accusations of sexual assaults where both the victims and alleged perpetrators are minor students, the School District asks the Court "to seal these proceedings in their entirety." (Doc. 14, p. 5). It asserts that "[n]o live testimony and no record of this case- be it a pleading, motion, brief, court order or otherwise, should be open to the public without a prior order of this Court." *Id.* The School District argues that "the right of the children and their families to privacy, peace and an opportunity to heal" outweighs "the public's generalized interest in open court proceedings." *Id.* at p. 4. Ms. Nelle argues that the School District's "motion is about hiding the Defendant's own misconduct from the media and the public." (Doc. 38, p. 1).

The Court agrees with the School District that this case implicates compelling privacy interests of minor students. During these proceedings, the Court will not permit the identification of minor victims, alleged minor perpetrators, or the parents of any of these students. However, the Court also recognizes the public's interest in accessing these proceedings. Therefore, any solution to protect students' privacy interests should only be as restrictive as necessary. Sealing the entirety of these proceedings, as the School District urges, is overbroad. That sweeping remedy would bypass reasonable alternatives and unnecessarily infringes on the public's right of access.

To balance the competing interests, the Court will require the use of an identification key, accessible only to the attorneys and the Court, to mask the names of

students and parents involved in these events. The identification key will protect the confidentiality of the minor students while also allowing the public near-full access to these proceedings. It also facilitates public, on-the-record discussion of these events without revealing the identities of those involved. Unlike in *Webster Groves*, redaction is possible here—the identities of the victims and perpetrators can be protected by anonymizing any reference to them in these proceedings.

The School District argues redaction does not go far enough because Huntsville is a small town and members of that community will be able to roughly identify the victims and perpetrators based on their grade levels and participation in the basketball team. This argument would carry more weight if the present litigation represented the Huntsville community's first notice of these events. But, as the Record explains, the allegations made in this lawsuit were widely reported for months prior to the suit's filing. *See* Doc. 39, pp. 1–5. To the extent the School District is correct that a Huntsville local reading the Complaint could approximate the identities of those involved, that same local resident could make the same inferences by reading the paper. While the Court will not allow on-the-record identification of minors, sealing the entire case to prevent disclosure of already public facts would be an abuse of this Court's discretion.

Therefore, in all future filings and proceedings in this case, all students and parents, with the exception of Plaintiff Ms. Nelle and her son, B.N., will be referred to in accordance with the following identification key:

| Student Identifier | Parent 1 Identifier | Parent 2 Identifier |
|---|---|---|
| S1 | S1P1 | S1P2 |
| S2 | S2P1 | S2P2 |
| S3 | S3P1 | S3P2 |
| S4 | S4P1 | S4P2 |
| S5 | S5P1 | S5P2 |
| etc. | | |

The parties are to confer and jointly assign the actual names of students and parents to the identifiers above. The key should then be filed under seal. It need only identify those students and parents likely to be discussed in future filings or proceedings.[4]

To the extent a party believes, even with use of the identification key, some future filing fails to adequately anonymize the identity of a student or parent—perhaps due to the inclusion of other facts that make obvious the identity of an individual intended to be anonymous—the party should seek the Court's leave to file that document under seal. For unalterable documents, such as certain exhibits, where editing of names is not possible, the names of students and parents must be redacted and the document filed unsealed. An unredacted version of the document should then be filed under seal.[5]

The Court declines to preemptively shudder live proceedings in this case. Much of this case can be heard publicly without identifying the minors involved, and, when specific individuals must be identified on the record, the identification key system will protect anonymity in open court.

---

[4] The parties may need to amend the identification key as the case develops.

[5] Where a redacted, unsealed version of an unalterable document has already been filed, the parties may file the unredacted version under seal without first seeking the Court's leave.

There may come a point when identifying facts cannot be avoided and closure of an otherwise public proceeding therefore becomes necessary. The Court will make such a determination at that time, based on the facts to be presented at that proceeding and in consideration of reasonable alternatives.

For these reasons, the School District's Motion to Seal (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**. The parties[6] are **ORDERED** to confer and file a joint identification key no later than **January 12, 2022**. Ms. Nelle is **ORDERED** to file an unsealed amended complaint that removes the initials of all minors and replaces those initials with the identifiers listed in the joint identification key no later than **January 19, 2022**.

### IV. PROTECTIVE ORDER

There remains an outstanding discovery issue that implicates the privacy interests discussed above. In the parties' Joint Rule 26(f) Report (Doc. 43), the School District requests the Court enter a protective order to govern access to materials produced during discovery. The Family Education Records and Privacy Act ("FERPA") prohibits "the release of education records" or "personally identifiable information contained therein other than directory information" concerning "students" without permission. 20 U.S.C. § 1232g(b)(1). FERPA allows the disclosure of students' educational records if "such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational

---

[6] The term "parties" in this Opinion and Order refers to the Plaintiff and Defendant.  The Court, obviously, does not consider the Intervenor a party for purposes of its rulings here.

13

institution." *Id.* § 1232g(b)(2)(B). Given the statutory responsibilities of the School District to protect confidential student information and sensitive subject matter of this litigation, the Court finds a protective order warranted.

Accordingly, the School District is **ORDERED** to produce records to Ms. Nelle's counsel that are otherwise confidential pursuant to FERPA and the Arkansas Child Maltreatment Act, Ark. Code Ann. § 12-18-104. The School District shall label all records protected by these statutes in a manner that identifies them as confidential and for attorneys' eyes only. Access to such confidential records will be limited to counsel for the parties to this action (including legal assistants, paralegals, legal secretaries, and other persons employed and supervised by such counsel of record).

## V.  CONCLUSION

For all the reasons stated above, the Motion to Limit Pretrial Publicity (Doc. 10) is **DENIED**, and the Motion to Seal Case (Doc. 13) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED** on this 29th day of December, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE